No. 88,787

CAROLYN NARRON, *Appellee,* v. CINCINNATI INSURANCE COMPANY, *Appellant.*

(97 P.3d 1042)

Opinion filed September 24, 2004.

*M. Duane Coyle,* of Hinkle Elkouri Law Firm, L.L.C., of Wichita, argued the cause, and *J. Philip Davidson* and *Roger M. Theis,* of the same firm, were with him on the briefs for appellant.

*Gerald W. Scott,* of Gerald W. Scott, P.A., of Wichita, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

BEIER, J.: This auto accident case requires us to decide whether an injured driver may recover from her excess underinsured motorist carrier after a primary underinsured policy with an identical limit has been exhausted by payments to the driver and the estate of a passenger.

Plaintiff Carolyn Narron filed this lawsuit against defendant Cincinnati Insurance Company (Cincinnati), claiming she was entitled

to recover her underinsurance policy limit of $300,000. Both parties filed motions for summary judgment. The district court ruled in favor of Narron and granted her motion for attorney fees. Cincinnati appealed to the Kansas Court of Appeals, which reversed the district court's decision. We granted Narron's petition for review to this court.

The relevant facts are:

Narron was driving her parents' car with her parents, Milburn and Mildred Chestnut, as passengers, when it was struck by a car owned and driven by Philip Pinto. Narron suffered severe injuries, and Mildred Chestnut was killed. Narron's resulting medical expenses exceeded $283,000, and she was permanently disabled. It is undisputed that Pinto was 100 percent at fault.

The accident implicated three different insurance policies issued by three companies. Pinto was insured by Farmers Insurance Company (Farmers). The Farmers policy had liability limits of $100,000 per person and $300,000 per occurrence. Because the combined damages from Mildred Chestnut's death and Narron's injuries would far exceed Pinto's liability limits, underinsured motorist (UIM) coverage came into play. The Chestnuts were insured by St. Paul Fire & Marine Insurance Company (St. Paul). The St. Paul policy had an underinsured coverage limit of $300,000 per occurrence and an "other insurance" clause. Cincinnati insured Narron. Her policy included underinsured motorist coverage up to $300,000 per occurrence.

The Cincinnati policy provided in pertinent part:

"1. Any recovery for damages for bodily injury sustained by a covered person may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance.

"2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance."

Mildred Chestnut's estate and Narron each received $100,000 from Farmers. St. Paul paid Mildred Chestnut's estate $200,000 and Narron $100,000, exhausting its UIM coverage limit of $300,000.

Narron then made a claim against Cincinnati for her full $300,000 UIM coverage. Relying on *Farmers Ins. Co. v. Prudential*

*Property & Cas. Ins. Co.*, 10 Kan. App. 2d 93, 692 P.2d 393, *rev. denied* 237 Kan. 886 (1985), which upheld an "other insurance" provision that established a priority of payment between insurers with uninsured motorist coverage, Cincinnati denied her claim. Cincinnati asserted that St. Paul was primary and that it was excess. Further, because Narron was limited to $300,000 UIM coverage, which had been the limit of the St. Paul policy, Cincinnati took the position Narron could not reach her excess UIM coverage.

The parties stipulated that Narron's damages alone would exceed the combined total of all of the policies' coverage limits. In granting Narron the full $300,000 from Cincinnati and attorney fees, the district court found that Cincinnati provided UIM coverage in excess of statutory requirements, that nothing in its policy limited Narron's recovery of her full policy limit under these facts, and that full recovery would not result in impermissible stacking because Narron would not receive a duplicate recovery. The district court relied on *Wheeler v. Employer's Mutual Casualty Co.*, 211 Kan. 100, 505 P.2d 768 (1973), for the general legal proposition that an ambiguity in an insurance policy must be construed in favor of an insured.

The Court of Appeals' reversal first noted that, "[w]here two primary policies both contain excess 'other insurance' clauses, the excess clauses are . . . treated as mutually repugnant and the loss is pro rated between the insurers." *Narron v. Cincinnati Ins. Co.*, 32 Kan. App. 2d 28, 34, 78 P.3d 1188 (2003). However, relying on 15 Couch on Insurance 3d § 219:48, the Court of Appeals stated: "[W]here a vehicle owner's policy and a policy providing nonowned vehicle coverage to the driver have conflicting excess 'other insurance' clauses, the vehicle owner's policy is deemed primary and the driver's policy excess." *Narron*, 32 Kan. App. 2d at 34. Thus St. Paul was the primary UIM insurer, and Cincinnati was excess. *Narron*, 32 Kan. App. 2d at 34.

The Court of Appeals then turned to Cincinnati's policy language, which stated its coverage would be excess over any "collectible" insurance. Thus the question before the court was whether the coverage limit in St. Paul's policy was "collectible" insurance to Narron. *Narron*, 32 Kan. App. 2d at 34. The court

quoted the definition of collectible from Black's Law Dictionary: " 'Debts, obligations, demands, liabilities that one may be made to pay by means of legal process.' " *Narron*, 32 Kan. App. 2d at 35. The court also quoted *State Farm Mutual Insurance Co. v. Vines*, 193 So. 2d 180, 182 (Fla. Dist. App. 1966), which found that the insurance policy must be collectible at the time of the accident, and *Bernard Lumber v. Louisiana Ins. Guar.*, 563 So. 2d 261, 265 (La. App. 1990), which held that " 'collectible' in an insurance policy does not refer to the actual payment of a sum of money but instead refers to the existence of other applicable and available insurance coverage based on the particular claim in question." *Narron*, 32 Kan. App. 2d at 35-36.

Following *Vines* and *Bernard Lumber*, the panel held that St. Paul's entire UIM coverage had been "collectible insurance" to Narron, despite the valid competing claim of her mother's estate, and thus Narron was entitled to no excess recovery from Cincinnati. *Narron*, 32 Kan. App. 2d at 36. The Court of Appeals also reversed the district court's holding on the anti-stacking provision of K.S.A. 40-284(d) and reversed its attorney fee award to Narron. *Narron*, 32 Kan. App. 2d at 36-38.

Our standard of review in this case is de novo. We are called upon to interpret a statute, K.S.A. 40-284(d), and to interpret a written insurance contract. Such interpretations raise questions of law, making an appellate court's review unlimited. See *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003) (interpretation of statute); *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 763, 27 P.3d 1 (2001) (regardless of construction given written contract by district court, appellate court may construe written contract, determine its legal effect). Specifically, we construe insurance policies "in a way that will give effect to the intention of the parties." *Brumley v. Lee*, 265 Kan. 810, 812-13, 963 P.2d 1224 (1998). An insurance policy is ambiguous if " 'there is a genuine uncertainty as to which of two or more possible meanings is proper.' " *First Financial Ins. Co. v. Bugg*, 265 Kan. 690, 698, 962 P.2d 515 (1998). "If the language is ambiguous, the construction most favorable to the insured must prevail," but, when a

policy is not ambiguous, we do not remake it. *Brumley*, 265 Kan. at 812-13.

We turn first to two questions about which there remains no reasonable dispute.

First, as this case reaches us, it is apparent that there remains little or no controversy over the Court of Appeals' holding that St. Paul was the primary UIM insurer and Cincinnati the excess. Under these facts, that decision is supported by the weight of authority. See *Progressive Casualty Ins. Co. v. Farm Bureau Mut. Ins. Co.*, 27 Kan. App. 2d 765, 767, 9 P.3d 565, *rev. denied* 270 Kan. 899 (2000) (where two "other insurance" clauses, policy covering vehicle owner is primary); *Gaught v. Evans*, 361 So. 2d 1027, 1029 (Ala. 1978) (majority rule: insurance policy of driver of unowned vehicle excess; insurance policy of vehicle owner primary); see also 15 Couch on Insurance 3d § 219:48 ("where a vehicle owner's policy and a policy providing nonowned vehicle coverage to the driver have conflicting excess other insurance clauses, the vehicle owner's policy is deemed primary and the driver's policy excess").

We also are satisfied that the Court of Appeals properly decided the stacking issue against Narron.

K.S.A. 40-284(d), the anti-stacking provision of the uninsured and UIM coverage statute, states:

"Coverage under the policy shall be limited to the extent that the total limits available cannot exceed the highest limits of any single applicable policy, *regardless of the number of policies involved*, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid or vehicles involved in an accident." (Emphasis added.)

Cincinnati's policy specifically states that "[a]ny recovery for damages for bodily injury sustained by a covered person may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance."

We have defined "stacking" as " 'the right to recover on two or more policies in an amount not to exceed the total of the limits of liability of all policies up to the full amount of the damages sustained.' " *Eidemiller v. State Farm Mut. Auto. Ins. Co.*, 261 Kan. 711-12, 933 P.2d 748 (1997) (quoting *Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. 595, 608, 549 P.2d 1354 [1976]). We

have held that the purpose of K.S.A. 40-284(d) "is to prohibit stacking uninsured motorist coverage on vehicle liability policies." *Eidemiller*, 261 Kan. at 724. This holding applies equally to stacking of UIM coverages. This statutory provision would have been a part of the Cincinnati policy, regardless of whether it had included the reinforcing language quoted above.

In this case, the highest applicable UIM limit in both St. Paul's and Cincinnati's policies was $300,000. This was the total amount Narron could recover from the combination of Farmers, St. Paul, and Cincinnati.

Now we turn to the critical issue in this case: whether the full $300,000 UIM coverage from the St. Paul policy was "collectible insurance" to Narron. This is an issue of first impression.

The phrase "collectible insurance" appears in Cincinnati's "other insurance" clause. Such clauses are commonly used to establish priority among multiple insurance policies covering an insured. *Western Casualty & Surety Co. v. Trinity Universal Ins. Co.*, 13 Kan. App. 2d 133, 136, 764 P.2d 1256 (1988). The policy does not define the phrase, and cases from other jurisdictions demonstrate that it and similar phrases are susceptible to more than one interpretation. We therefore regard the policy language as ambiguous.

In both the *Vines* and the *Bernard Lumber* cases relied upon by the Court of Appeals, the primary insurer had become insolvent since the subject accident, and the court had to decide whether the excess insurer would be liable as a result. See *Vines*, 193 So. 2d at 182; *Bernard Lumber*, 563 So. 2d at 265. Both courts held that the excess insurer need not pay. 193 So. 2d at 182; 563 So. 2d at 266.

To both courts, the implications of the insolvency setting were significant to the outcome. They recognized that excess insurers do not intend to be and are not guarantors of the economic viability of primary insurers. As an earlier Louisiana decision had stated it: " 'An excess liability insurer obviously does not anticipate this heavy onus: Excess or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted.' " *Radar v. Duke Transp. Inc.*, 492 So. 2d 532, 537 (La. App. 1986).

Aside from consideration of the phrase "collectible insurance," similarities between *Vines* and *Bernard Lumber* on the one hand and this case on the other are difficult to find. We agree with the *Vines* and *Bernard Lumber* courts that requiring an excess insurer to cover liabilities of a primary insurer that becomes insolvent after an accident imposes a heavier burden than the excess insurer bargained for. Here, however, Cincinnati is not being asked to assume a burden heavier than that implied in any excess insurance provision.

The following discussion examines an alternative group of cases interpreting "other insurance" clauses using the word "available" rather than "collectible." The facts of these cases and the analyses flowing from them cannot be discounted. In fact, we regard them as more persuasive than the insolvency cases.

In *Kraft v. Allstate Insurance Company*, 6 Ariz. App. 276, 431 P.2d 917 (1967), the plaintiff, a passenger in one car, sustained injuries from an auto accident involving an uninsured driver in the other car. The plaintiff, Richard Kraft, sued the driver of the car in which he was riding and that driver's insurance company. After Kraft received a settlement from the driver's insurance policy under its personal liability provision, he then sued his own insurance company, Allstate, under the uninsured driver provision in his policy. The policy also contained an "other insurance" clause, which provided the policy would not apply " '[t]o bodily injury of an insured sustained while in or upon, entering into or alighting from, any automobile, other than an owned automobile, if the [automobile] owner has insurance similar to that afforded by this Section and that insurance is available to the insured.' " *Kraft*, 6 Ariz. App. at 277.

The court thus had to decide whether the vehicle owner's uninsured coverage was "available" to Kraft, in addition to the amount he had already received in settlement by virtue of the liability coverage in that policy. *Kraft*, 6 Ariz. App. at 278. This determination required a clarification: Did " 'other similar insurance available' mean[] insurance proceeds that an insured may collect and spend, or simply, . . . 'other' insurance existing on paper?" *Kraft*, 6 Ariz. App. at 278. The amount Kraft received from the driver's insurance

company under the liability provision had exhausted the total policy limit of the driver's policy. In these circumstances, the *Kraft* court held:

"To limit [Kraft's] remedy against the uninsured motorist to the [driver's insurance company] effectuates a forfeiture of [Kraft's] uninsured motorist coverage. Allstate charged a premium for the coverage; it cannot be permitted to vanish as the pea in the shell game. . . . [T]o permit the insurance company, which received the additional premium, to avoid liability when its insured in fact cannot collect for his loss under the 'other insurance' shocks the conscience of this court." *Kraft*, 6 Ariz. App. at 279.

A panel of the Missouri Court of Appeals later followed *Kraft*. In *Gordon v. Maupin*, 469 S.W.2d 848, 850 (Mo. App. 1971), the plaintiff, one of three passengers in a car, was injured in an accident caused by an uninsured motorist. Plaintiff and the vehicle owner were insured by American Family Mutual Insurance (American); each policy had an uninsured coverage limit of $5,000 per person, $10,000 per occurrence. Through the owner's policy, the owner and the other injured passengers obtained $8,397, and American admitted liability to plaintiff for the remaining amount of $1,603. The plaintiff declined that amount and instead sought $5,000 under the uninsured provision in her own policy. American argued that the entire $10,000 had been "available" to plaintiff under the owner's policy, and she was thus precluded from accessing any amount under her own policy. Her own policy included an "other insurance" clause that said: " 'With respect to bodily injury to an insured while occupying an automobile not owned by a named insured, . . . the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant.' " 469 S.W.2d at 849.

The *Gordon* court noted that terms of an insurance policy subject to more than one construction should be construed to favor the insured. 469 S.W.2d at 849. In addition, the court said it did not matter whether the owner's coverage was seen as available to plaintiff at the time of the accident or at the time of suit: "At collision time the $10,000 coverage was available to plaintiff only in a hypothetical sense; it was equally available to the [three other] injured persons and available to the plaintiff only to the extent that

it might not be paid to the [others]." 469 S.W.2d at 849-50. The court held, as in *Kraft*, that the amount the insurance company claimed was "available" to plaintiff was available only on paper. The plaintiff could also recover under her own policy. 469 S.W.2d at 850-52.

*Gordon* rejected contrary reasoning in an Illinois Court of Appeals case, *Tindall v. Farmer's Auto. Management Corp.*, 83 Ill. App. 2d 165, 226 N.E.2d 397 (1967). In that case, the court had decided the primary insurance coverage limit was "available" to the plaintiff, in spite of other injured claimants, because the claimants "were entitled to no greater protection than they would have had if the uninsured motorist carried the minimum" insurance required by state law. See 469 S.W.2d at 851. The Missouri panel rejected this "substituted coverage" rule because the purpose of uninsured motorist coverage was to "give needed protection to injured persons who had paid for such insurance." 469 S.W.2d at 851. American, it said, had not insured the uninsured motorist against liability; it had insured plaintiff "against inadequate compensation. She chose to provide, at her own expense, additional protection under the uninsured motorist provision of her policy." 469 S.W.2d at 851-52.

In an unpublished decision, the Arkansas Court of Appeals also relied on *Kraft* in a case factually similar to the one before us. In that case, which the Arkansas Supreme Court permitted to stand, *Toney v. Shelter Mutual Insurance Co.*, 1989 WL 72285 *1, *rev. denied* 300 Ark. 89 (1989), the plaintiff was a passenger in a car owned by someone else when the accident occurred. The car was covered by the vehicle owner's policy, and the plaintiff had her own Shelter Insurance (Shelter) policy. The tortfeasor was uninsured. One of the other passengers in the car in which plaintiff was riding was killed in the accident. The vehicle owner's insurance company prorated its uninsured coverage among the persons injured in the accident. The plaintiff sought additional recovery under her own policy's uninsured motorist provision. Shelter denied coverage, claiming its "other insurance" clause protected it from liability. The "other insurance" clause stated: "With respect to an insured in an auto not owned by you, this insurance shall apply

only as excess insurance over any other similar insurance available to the insured as primary insurance." 1989 WL 72285 *1.

The court determined that the phrase, "any other similar insurance available to the insured," was ambiguous. Did the insurance company mean, "[i]n terms of 'availability,' . . . available to everyone injured in the accident at the time it occurred, or actually available to the insured?" The court noted that an ambiguous insurance clause will be construed against the insurer and in favor of the insured, and that "the purpose of uninsured motorist coverage is to protect the insured from financially irresponsible motorists." 1989 WL 72285 *2. It was persuaded by *Kraft* that: "'available' means 'actually available' to the insured." Given that only a portion of the vehicle owner's coverage was actually available to Shelter's insured because the coverage was prorated among the injured, the excess insurer was liable. 1989 WL 72285 *2-3.

A judge for the United States District Court for the District of Connecticut has distinguished *Kraft* and *Gordon* and cautioned against a blanket interpretation of "other insurance" clauses in favor of the insured. In *Hoffman v. United Services Auto. Ass'n*, 671 F. Supp. 922, 925 (D. Conn. 1987), the plaintiff, a passenger, injured in a car accident, settled with the vehicle owner's insurance company for less than the owner's policy limit. The plaintiff then sued his own insurance company to recover under the UIM provision in his policy. It was not alleged that any other passenger also had made a claim against the vehicle owner's insurance company.

The court held that the term "available" in the governing "other insurance" clause "permits, and dictates, that the reference was to funds which were obtainable or within the legal reach of the insured. Construing the term in this manner allows the interest of both the insured and the insurer to be protected." 671 F. Supp. at 925. The court was persuaded that an excess insurer's purpose is emasculated if

"the primary carrier is allowed to circumvent its obligations by settling with the victim for less than his full damages, without exhausting its coverage . . . . [C]onstruing the word 'available' to mean that which is *reasonably* available ensures that the excess insurer's expectations are protected, *i.e.*, that its coverage will truly be excess. . . . The insured's . . . protection is lost only to the extent

he waives or fails unreasonably to effectuate a claim to the primary coverage." (Emphasis added.) 671 F. Supp. at 925.

Such a rule requires that the insured do only "what is reasonable to obtain the available, primary coverage. If, after reasonable efforts, there is no other coverage available, then the excess coverage can be tapped." 671 F. Supp. at 925.

When the facts of this case are measured against the analytical yardstick of this group of cases, we hold that Narron has obtained all of the UIM proceeds reasonably available to her from the primary insurer, St. Paul. The total of St. Paul's $300,000 coverage was never anything more than "collectible" or "available" to her on paper because, even at the moment of impact, her mother or her mother's estate had an equally valid claim to that coverage. There is nothing before us to demonstrate that she waived or failed unreasonably to effectuate her claim to the St. Paul coverage. In fact, she obtained $100,000. When that distribution to her and the $200,000 distribution to her mother's estate exhausted St. Paul's UIM coverage, Narron was entitled to turn to her excess insurer to recover her excess damages up to the $300,000 combined limit. This means she is due $100,000 from Cincinnati, the difference between the total amount she received from St. Paul and Farmers, *i.e.*, $200,000, and the highest UIM coverage limit, *i.e.*, $300,000.

Our interpretation also is supported by general Kansas policy. An ambiguous insurance provision is interpreted in favor of the insured. See *Brumley*, 265 Kan. at 812-13. Further, in *Cashman v. Cherry*, 270 Kan. 295, Syl. ¶ 2, 13 P.3d 1265 (2000), we held that the uninsured and underinsured statutory scheme fills "the gap inherent in motor vehicle financial responsibility legislation and compulsory insurance legislation." It should be liberally construed to compensate innocent persons injured by others who have insufficient insurance.

Finally, because a substantial legal issue of first impression in Kansas was presented by this case, Cincinnati's challenge to Narron's claim was legitimate and not made in bad faith. See K.S.A. 40-256 (fees available when it appears from evidence that insurance company refused without "just cause . . . to pay the full

amount of such loss"). Narron is therefore not entitled to attorney fees, and the Court of Appeals' reversal of the district court on that point was correct.

The Court of Appeals is affirmed in part and reversed in part; the district court is affirmed in part and reversed in part. Judgment for and award to plaintiff is modified to $100,000; attorney fees order is vacated.