FILED
United States Court of Appeals
Tenth Circuit

November 8, 2016

Elisabeth A. Shumaker
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

PROGRESSIVE NORTHWESTERN
INSURANCE COMPANY,

     Plaintiff - Appellee,

v.

BRENDA HANDSHUMAKER,

     Defendant - Appellant,

and

ANGIE VANGILDER; GARY
VANGILDER,

     Defendants.

No. 16-3045
(D.C. Nos. 2:15-CV-02324-JAR-TJJ &
6:15-CV-01128-JAR-TJJ)
(D. Kan.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **KELLY**, **GORSUCH**, and **MATHESON**, Circuit Judges.
_____

    Brenda Handshumaker appeals from the entry of summary judgment in favor

of Progressive Northwestern Insurance Company (Progressive) in this diversity

jurisdiction action to determine coverage under a motor vehicle insurance policy

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

issued by Progressive. On de novo review, *see Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015), we affirm for substantially the reasons stated by the district court.

While driving a box truck rented by a third party from Budget Rental, Gary Vangilder struck and injured Ms. Handshumaker, who obtained a $225,000 consent judgment against him. After accepting $25,000 from Budget Rental reflecting the limit of its policy on the truck, Ms. Handshumaker sought to recover the remainder from Progressive on a policy issued to Angie Vangilder and, derivatively, her spouse Gary. Progressive, which had earlier declined to defend Mr. Vangilder in the tort case for lack of coverage under the policy, brought this declaratory judgment action seeking a determination that it had no obligation to pay Ms. Handshumaker for the same reason.[1]

Progressive's policy provided liability coverage (Part I of the policy) for bodily injury "for which an insured person becomes legally responsible because of an accident." App. at 39. The policy defined "insured person" to include the named insured and relatives "with respect to an accident arising out of the . . . use of *an auto* or trailer." *Id.* at 40 (emphasis added); *see also id.* at 38 (defining "covered auto" also in terms derivative of definition of "auto"). The policy defined "auto" to exclude "cargo cutaway vans or other vans with cabs separate from the cargo area." *Id.* at 38. The Budget Rental box truck driven by Mr. Vangilder did not meet this

---

[1] Ms. Handshumaker also brought a state garnishment case against Progressive that was removed to federal court and subsequently consolidated with Progressive's declaratory judgment action.

definition of an auto because it fell within the exclusion. Accordingly, the district court concluded "that the clear and unambiguous terms of the Policy demonstrate that Mr. Vangilder was not an insured person under Part I of the Policy because he was not using or operating a covered auto." *Id.* at 170.[2] We agree with this analysis.

Ms. Handshumaker sought to avoid that straightforward conclusion by relying on another provision in the policy, addressing "Other Insurance," which stated:

> If there is any other applicable liability insurance or bond, we will pay only our share of the damages. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle or trailer, other than a covered auto, will be excess over any other collectible insurance, self-insurance, or bond.

*Id.* at 42 (emphasis omitted). She contended the reference to "insurance we provide for a *vehicle*" reflected Progressive's assumption of an excess-coverage obligation for accidents involving vehicles that did not necessarily meet the restrictive definition of "auto" for primary coverage. Alternatively, she contended the provision created an ambiguity, triggering the principle that "[i]f the terms of a policy of insurance are ambiguous or obscure or susceptible of more than one construction, the construction most favorable to the insured must prevail." *Bussman v. Safeco Ins. Co. of Am.*, 317 P.3d 70, 77 (Kan. 2014) (internal quotation marks omitted); *see also*

---

[2] Although the district court referred here only to the use of a "covered auto" (i.e., an auto owned by the insured and listed on the policy's declarations page or a later substituted or added auto, *see* App. at 38-39), it is clear from the operative provision quoted above that the policy covered an insured's use of other autos. *See* App. at 40. But the district court's overarching point remains valid: coverage was in any event limited to vehicles meeting the policy's restrictive definition of "auto."

*Bendis v. Fed. Ins. Co.*, 958 F.2d 960, 962 (10th Cir. 1991) (insurance policy is to be construed by applying principles of state law).

In response to the first argument, the district court held that the Other Insurance provision did not affect coverage. Reading the provision as addressing the contingency of Progressive's *shared* coverage with another entity, the district court held that it had no application where, as here, the policy did not provide coverage in the first place. As it explained:

> The Court reads the Policy as a whole, as it must, and finds this Other Insurance provision does not provide an independent basis for coverage where the Policy otherwise disclaims coverage in the same part. As Progressive correctly explains, the Other Insurance provision merely sets forth priority when there is more than one policy that provides coverage for a loss. Priority only comes into play where two or more policies provide coverage. As explained above, the plain terms of the Progressive Policy do not provide coverage for bodily injury unless an 'insured person becomes legally responsible because of an accident.' Mr. Vangilder is not an insured person under the Policy because he was using a vehicle that does not meet the definition of 'auto' under the plain terms of the Policy.

App. at 171 (footnotes omitted). We agree. The Other Insurance provision provides that when the policy and another policy both afford coverage, Progressive's obligation is limited to excess coverage unless a "covered auto" is involved—i.e., an auto listed on the declarations page (or one substituted or added later), *see supra* note 2. But we do not face this situation here. The Progressive policy did not provide coverage because the Budget Rental truck that Mr. Vangilder had been driving was

not an "auto" under the Progressive policy. Nothing Ms. Handshumaker argues on appeal effectively challenges this analysis.[3]

In response to Ms. Handshumaker's contention that, regardless of whether the Other Insurance provision actually applies to the facts, use of the undefined term "vehicle" therein creates an ambiguity in the policy, the district concluded: "Reading the Other Insurance provision along with the coverage provisions in Part I, the Court finds no ambiguity that the Budget Rental Box Truck was not covered by the Policy." App. at 171. We agree. With respect to the dispositive issue of coverage (governed by the clearly defined term "auto"), the policy is not ambiguous, and the Other Insurance provision does not render it so.

Ms. Handshumaker cites two cases she claims support her contrary position, but neither is germane to the operative provisions here. The first involved a homeowner's policy that excluded coverage for intentional acts of any insured but also provided that the policy "applie[d] separately to each insured." *Catholic Diocese of Dodge City v. Raymer*, 840 P.2d 456, 458-59 (Kan. 1992). After prevailing on a negligent-supervision claim against the policy-holding parents for

---

[3] She contends her position is supported by *Farm Bureau Mutual Insurance Co. v. Enterprise Leasing Co.*, 58 P.3d 751, 754-55 (Kan. Ct. App. 2002), in which an auto insurance policy was found to provide primary coverage for an insured's use of a leased truck. The district court found *Farm Bureau* inapposite, because in that case "the central dispute was whether the driver's insurance policy or the rental company's insurance policy provided primary or excess coverage under an Other Insurance provision" and "[t]here was no question that the [driver's] policy covered the vehicle in question in the first place." App. at 171 n.29. Ms. Handshumaker insists "the issue of coverage in the first place is [also] not an issue in the current case," Aplt. Br. at 7, but that denies the very crux of the district court's analysis that we affirm above.

vandalism committed by their child, the plaintiff sought recovery under the policy. Although the intentional-act exclusion applied because the child was an insured and had acted intentionally, the court held that the separate-application provision rendered the exclusion ambiguous with respect to the negligence claim pursued separately against the parents and allowed recovery under the policy. *Id.* at 459, 462. That holding—recognizing the ambiguous effect of a separate-application provision on an exclusion triggered by intentional conduct of an insured other than the insured being sued—has no relevance here. It does illustrate one instance of an ambiguity resulting from the combination of two policy provisions, but it throws no light on the particular combination of provisions involved in this case.

The same is true of the other case relied on by Ms. Handshumaker. In *Narron v. Cincinnati Insurance Co.*, 97 P.3d 1042 (Kan. 2004), an injured driver sought recovery of underinsured motorist benefits under excess coverage provided by her insurer after she obtained a limited uninsured-motorist benefit under another policy (which had to be split with a passenger who died in the accident). The dispositive issue was the meaning of the phrase "collectible insurance," used to limit the driver's excess coverage by setting off amounts collectible from other insurers. *Id.* at 1047-48. The driver's insurer contended that because the uninsured-motorist benefit in the other policy was equal to the limit of its excess obligation to her—even though she actually received only a fraction of that benefit—no excess obligation remained to be paid. The court regarded the undefined phrase "collectible insurance" as ambiguous, *id.* at 1048, and ultimately construed it in favor of the driver so as to

limit the set-off against her excess coverage to the fractional benefit she actually recovered from the other insurer. *See id.* at 1050. In short, Ms. Handshumaker has offered another illustration of an ambiguity construed against an insurer, but one that is not germane to the analysis of her policy.

Ms. Handshumaker has failed to demonstrate any error in the disposition of this case. We therefore affirm the judgment of the district court.

ENTERED FOR THE COURT,

Scott M. Matheson, Jr.
Circuit Judge