NOT DESIGNATED FOR PUBLICATION

No. 126,264

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JASON BRUNGARDT and CHRISTINE BRUNGARDT,
*Appellants*,

v.

DS&O ELECTRIC COOPERATIVE, INC.,
and
VBA II, LLC,
*Appellees*.

MEMORANDUM OPINION

Appeal from Saline District Court; PAUL J. HICKMAN, judge. Oral arguments held February 4, 2025. Opinion filed February 28, 2025. Affirmed.

*Kurt S. Brack* and *Seth M. Snyder*, of Brown & Ruprecht, PC, of Kansas City, Missouri, for appellants.

*Russel B. Prophet*, of Hampton & Royce, L.C., of Salina, for appellee DS&O Electric Cooperative, Inc.

*Rachel N. Wetta*, of Foulston Siefkin LLP, of Wichita, for appellee VBA II, LLC.

Before COBLE, P.J., SCHROEDER and ISHERWOOD, JJ.

PER CURIAM: Jason and Christine Brungardt leased a portion of their property to VBA II, LLC (VBA) for broadcasting. DS&O Electric Cooperative, Inc. (DS&O) supplies electricity to the property. DS&O initially placed a power pole located within VBA's leased portion of the property in 1974. In 2018, DS&O installed a new taller pole with additional equipment attached to better maintain and monitor its electrical system in

1

the area. The Brungardts assert many claims against VBA and DS&O over the installation of the new pole. The district court granted both VBA and DS&O summary judgment. The Brungardts timely appeal, claiming fact questions exist to deny both VBA and DS&O summary judgment. As more fully explained below, we find the district court correctly granted both VBA and DS&O summary judgment. Therefore, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The Brungardts own the second highest hill in Kansas on their 76 acres of property in Saline County. The prior owners of the land leased a small tract on the property to a broadcasting company in 1974 to construct a 240-foot radio tower and associated buildings. The lease agreement did not permit the lessee to assign the lease or sublet the property for any purpose other than broadcasting without first obtaining consent from the landowner/lessor. The agreement has been continuously renewed with the last renewal in 2014 by the Brungardts as the current owners of the property, extending the lease for another 20 years with an increased rate of rent.

The lease has been assigned through the years to various broadcasting companies. The current lessee under the lease is VBA, which still operates the radio tower. The successive lessees under the lease have entered into agreements with DS&O to provide electric power to the station. The agreements permitted DS&O the right of access to the property to place a power pole for the delivery of electricity.

The Brungardts bought the property in 2013. In August 2013, Jason and Christine signed an electronic agreement for electrical service and membership with DS&O to supply power to their home. The agreement appears identical to the agreement the radio station operators have signed with DS&O for electrical services. Christine claims she is not a party to the agreement despite the agreement showing she and Jason accepted the terms of the agreement online. The agreement specifies it was for "all of the electric

2

power and energy which the customer may need at a point of delivery . . . [and] will be delivered and received at a mutually agreed point on the Customer's premises."

In April 2020, the Brungardts filed a petition against DS&O and VBA, asserting various claims related to the use of their property. The Brungardts claimed a DS&O representative contacted them in October 2018 about placing a 124-foot pole with an antenna on the property to read utility meters. The Brungardts denied DS&O permission to install the pole. DS&O then removed the existing approximately 29-foot wood power pole servicing the radio station on the leased tract and installed an approximately 45-foot wood pole with an antenna on the tract of land VBA leased. It appears the new pole is in the same hole as the old pole in between the 240-foot radio tower and the small building on the leased tract. The new pole is like the one replaced with the exception it now has an antenna attached with a control box along with a transformer. The Brungardts demanded DS&O remove the new pole and affixed equipment, claiming DS&O did not have an easement or right to install the pole and antenna and damaged the property in the process of installing the equipment. The Brungardts claimed DS&O trespassed on their property and asked the district court to enter a judgment ejecting DS&O from the property and quieting title in their name.

The Brungardts also claimed VBA breached its lease agreement by allowing DS&O to install additional utility equipment in the leased area. As such, the Brungardts contended VBA trespassed by continuing to use the land after breaching the lease agreement. The Brungardts asked the district court to eject VBA from the property and quiet title in their name.

DS&O answered the Brungardts' petition and asserted affirmative defenses, including the statutory right under K.S.A. 17-4627 for a cooperative to maintain electric transmission or distribution lines, and consent to access the property by way of an agreement for electric service and membership. VBA also answered the Brungardts'

3

petition, asserted affirmative defenses, and filed a cross-claim against DS&O. The cross-claim is not at issue on appeal.

DS&O moved for summary judgment against the Brungardts and VBA but directed all of its memorandum and brief at the Brungardts, contending (1) K.S.A. 17-4627 barred the Brungardts' claim against DS&O; (2) even if DS&O did not have a statutory right to be on the property, the Brungardts consented by applying for and accepting membership with DS&O for electrical services; and (3) the Brungardts suffered no damages. The Brungardts filed a memorandum in opposition to DS&O's motion for summary judgment, to which DS&O replied.

VBA also moved for summary judgment, asserting it did not breach the broadcasting lease agreement with the Brungardts as it did not assign the lease or sublet the property to DS&O. VBA argued it did not install or provide consent for the installation of DS&O's utility pole and antenna and did not trespass on the Brungardts' property. The Brungardts, therefore, had no right to eject VBA and quiet title to the property. The Brungardts filed a memorandum in opposition to VBA's motion for summary judgment, and VBA replied.

At the hearing on the parties' motions for summary judgment, DS&O asserted the three arguments in its motion provide separate, independent grounds to dismiss the Brungardts' claims. DS&O argued it not only had the right to maintain and improve its equipment on the Brungardts' land, but it also had a responsibility to bring the utility equipment up to industry standard. DS&O asked the district court to dismiss the Brungardts' claims. VBA argued all the Brungardts' causes of action were based on DS&O's conduct and if the Brungardts' claims were dismissed as to DS&O, there were no claims remaining against VBA. The Brungardts responded that VBA had a duty to preserve and protect the Brungardts' reversionary interest in the leasehold estate.

4

The district court took the matter under advisement and later granted both motions for summary judgment.

ANALYSIS

*The Brungardts' Claims Provide No Material Facts Upon Which to Base a Denial of Defendants' Motions for Summary Judgment*

The Brungardts argue the district court erroneously granted summary judgment for DS&O and VBA. Our standard of review on appeal from an order of summary judgment is well-settled:

> "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling is sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo." *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

*DS&O's motion for summary judgment*

With respect to DS&O, the Brungardts argue: (1) DS&O's claim it had a statutory easement over the property under K.S.A. 17-4627 fails; (2) they did not consent to DS&O's installation of communications equipment on their property; and, (3) DS&O's trespass on the property resulted in damages.

5

*Easement under K.S.A. 17-4627*

The Brungardts contend DS&O trespassed on their property as it did not have an express or implied easement, nor did it have an easement by statute under K.S.A. 17-4627. Specifically, they argue DS&O's interpretation of K.S.A. 17-4627 is too broad as the plain meaning of the statute applies to actions filed against a cooperative "by reason of the maintenance of electric transmission or distribution lines," not communications equipment.

DS&O responds the installation of the communications equipment constitutes maintenance of electric lines under K.S.A. 17-4627. And once DS&O maintained its lines on the property for two years—which occurred in 1976—DS&O claims the statute of limitations had run and there was no cause of action against DS&O.

The Brungardts counter by claiming DS&O's argument fails as "it is supported almost entirely by attorney representations and not actual references to the record on appeal." The Brungardts believe biased testimony from Timothy J. Power, DS&O's CEO and general manager, cannot support judgment as a matter of law. We find the Brungardts' arguments unpersuasive.

A trespass occurs when a person intentionally enters another's property "without any right, lawful authority, or express or implied invitation or license." *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 22, 378 P.3d 1090 (2016). DS&O claims it had lawful authority to enter the property under K.S.A. 17-4627. Therefore, we are presented with a question of statutory interpretation, over which we have unlimited review. *Narron v. Cincinnati Ins. Co.*, 278 Kan. 365, 369, 97 P.3d 1042 (2004).

K.S.A. 17-4627 states:

> "No action or suit may be brought against a cooperative doing business in this state pursuant to this act, or against any agent, servant or employee thereof, by reason of the maintenance of electric transmission or distribution lines on any real property after the expiration of a period of two years of continuous maintenance of such lines without the consent of the person or persons legally entitled to object to such maintenance."

The most fundamental rule of statutory construction is "that the intent of the Legislature governs if that intent can be ascertained." *In re Joint Application of Westar Energy & Kansas Gas and Electric Co.*, 311 Kan. 320, 328, 460 P.3d 821 (2020). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. 311 Kan. at 328. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Harsay v. University of Kansas*, 308 Kan. 1371, 1381, 430 P.3d 30 (2018). Where there is no ambiguity, we decline to use statutory construction. Only if the statute's language or text is unclear or ambiguous are we to use canons of construction or legislative history to construe the Legislature's intent. *Westar Energy*, 311 Kan. at 328.

K.S.A. 17-4627 limits the ability to sue a cooperative specifically as it relates to maintenance of electrical transmission or distribution lines after two years of continuous maintenance of such lines without consent. The Brungardts admitted that "DS&O has continuously provided electrical service to [their] Property since December 1, 1974, when it installed and energized services to [the location at issue in this suit] for EBC, Inc. (one of VBA's predecessors)." The Brungardts also did not controvert the fact "[t]he original service to [their] Property consisted of distribution lines running across [their] Property to a wooden transformer pole extending approximately 29 [feet] above ground, located adjacent to an approximately [240-foot] radio transmitting tower located on a

7

portion of [their] Property." The Brungardts knew the location of the power pole before purchasing the property and acknowledged the radio tower required electrical services to operate. Christine even testified in her deposition she was okay with the shorter pole as long as it did not have an antenna on it, though she still took issue with DS&O allegedly trespassing on the property.

The issue becomes whether DS&O's replacement of the approximately 29-foot wood pole with a new approximately 45-foot wood pole including attached antenna and related equipment is considered maintenance of electrical transmission or distribution lines. The Brungardts assert the new equipment is communications equipment and does not fall under the purview of electrical transmission or distribution lines. It is uncontroverted DS&O replaced the existing power pole with a taller pole and added an antenna with communications equipment to the pole. At oral arguments, the Brungardts no longer disputed DS&O replaced the old pole because it was deteriorating.

Our Supreme Court addressed a similar issue, though related to an express easement, in *City of Arkansas City v. Bruton*, 284 Kan. 815, 166 P.3d 992 (2007). There, the city had an easement agreement "to construct and maintain a dike," and our Supreme Court determined whether "improvements to [a] levee structure constitute[d] maintenance within the meaning of the easement[.]" 284 Kan. at 818, 844. Our Supreme Court considered various definitions of the term "maintain," and cited the Restatement (Third) of Property: Servitudes § 4.10 (1998), in determining the city's improvements to the dike were appropriate under the terms of the agreement to construct and maintain the dike. 284 Kan. at 845-46.

Maintenance is defined in relevant part in Black's Law Dictionary as:

"1. The continuation of something, such as a lawsuit. 2. The continuing possession of something, such as property. 3. The assertion of a position or opinion; the

act of upholding a position in argument. 4. The care and work put into property to keep it operating and productive; general repair and upkeep. . . ." 1139 (12th ed. 2024).

Webster's New World College Dictionary 880 (5th ed. 2018) similarly defines maintenance in relevant part as "a maintaining or being maintained; upkeep, support, defense, etc.; [specifically] the work of keeping a building, machinery, etc. in good repair. 2. a department or the personnel responsible for keeping a building, etc. in good repair. 3. means of support or sustenance; livelihood [a job that barely provides a maintenance]."

The Restatement (Third) of Property: Servitudes explains: "A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding the creation of the servitude, and to carry out the purpose for which it was created." Restatement (Third) of Property: Servitudes § 4.1(1) (2000). The Restatement further explains: "In discussing the proper interpretation of servitudes created without an expression of intention by the parties, the relevant focus of inquiry is on the expectations the circumstances should reasonably have engendered in the parties, rather than on their intention[s]." Restatement (Third) of Property: Servitudes § 4.1, comment a (2000). The Restatement also explains:

"Servitudes have the ability to determine land uses and patterns of development over long periods of time and to affect the value and utility of the land in ways that are often not foreseen or foreseeable by the parties who create them. Even if the parties who create them foresee the need for future change, they are often unwilling to invest the resources necessary to draft an instrument that provides an adequate mechanism for adapting to change. These factors have led courts to provide default terms that apply when there is no express term. They also lead to the conclusion that servitudes should usually be interpreted to provide the flexibility necessary to maintain their utility over time and to allow termination when their utility has ceased." Restatement (Third) of Property: Servitudes § 4.1, comment b (2000).

9

Here, the definition of maintenance in Black's Law Dictionary noted above—"[t]he care and work put into property to keep it operating and productive," and to provide "general repair and upkeep"—coincides with the Restatement (Third) of Property: Servitudes. That is, the statutory easement should "carry out the purpose for which it was created" and "should usually be interpreted to provide the flexibility necessary to maintain their utility over time." Restatement (Third) of Property: Servitudes § 4.1 (2000).

DS&O did not controvert the fact the antenna communicates with meters via radio frequency and has a base station connected to it that communicates via a cell phone network to DS&O's network hub. DS&O denied the Brungardts' assertion the equipment is exclusively communications equipment. Rather, Power testified DS&O began using the antennas in 2015 or 2016 as part of a modernization program to upgrade the metering system. Before the system upgrade, antennas ran along the power line to read the meters. The upgraded system allowed DS&O to monitor its electric lines.

Power explained that DS&O operations employees determined the pole at issue was weathered and deteriorating and needed to be replaced. The new pole was part of a distribution line and transmits or distributes electricity, though the attached antenna was not used to transmit electricity. Power, in his affidavit attached to DS&O's motion for summary judgment, explained DS&O used the base station and antenna to gather and transmit data and such a use was normal in the industry. The system allowed DS&O to provide uninterrupted service to its members by monitoring voltage alarms, locating and monitoring hot sockets, receiving immediate notice if a meter loses power, and remotely connecting and disconnecting electrical services.

DS&O's new pole and attached equipment were installed in furtherance of maintaining its electric services. DS&O must be afforded flexibility to maintain its power poles over time and improve its system. That necessarily means keeping up with

10

technological advancements to manage the flow of electricity and safety features. The antenna and other attached equipment on the pole help carry out the purpose of DS&O to provide electricity and to monitor its electrical system.

The Brungardts' claims against DS&O are not persuasive. The pleadings, depositions, and supporting affidavits show no genuine issue exists as to any material fact, and DS&O is entitled to judgment as a matter of law. The Brungardts, as the party opposing summary judgment, had to produce evidence to establish a dispute as to a material fact and have failed to do so. See *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019) ("'A party cannot avoid summary judgment on the mere hope that something may develop later during discovery or at trial. Mere speculation is similarly insufficient to avoid summary judgment. [Citations omitted.]'").

Here, DS&O had a statutory easement under K.S.A. 17-4627 to conduct maintenance by replacing and making improvements to equipment that had been on the Brungardts' property since 1974 in furtherance of operating its electric transmission and distribution lines. Because DS&O entered the property as permitted by the statute, it was not trespassing on the Brungardts' property. We affirm the district court's granting of DS&O's motion for summary judgment as DS&O must have flexibility to maintain its system. Because the district court properly granted DS&O's motion for summary judgment on the basis of a statutory easement, we find the issues of consent and damages related to a trespass moot.

*VBA's motion for summary judgment*

With respect to VBA, the Brungardts argue: (1) VBA breached its lease agreement with the Brungardts; (2) VBA's breach of the lease agreement caused damages to the Brungardts; (3) VBA no longer has the right to possess the Brungardts' property

11

due to the breach and is therefore trespassing; and (4) VBA should be ejected and title quieted in the Brungardts' name.

Our review of the record shows no support for the Brungardts' claims against VBA. DS&O has been providing electrical service to the radio station since 1974 and had the right to maintain and improve its service as time dictated. If DS&O had the right as it did to enter the property to effect maintenance on its pole, there can be no claim against VBA for breach of its lease agreement with the Brungardts, nor trespass, and no reason to quiet the title and terminate the lease. Brungardts have brought forth no allegations that VBA is using the property for anything other than operating its radio station. We find no evidence in the record to suggest VBA assigned the lease or sublet the property to DS&O. Again, DS&O had a right to be there.

The pleadings, depositions, admissions on file, and supporting affidavits show no genuine issue of material fact, and the Brungardts failed to bring forth evidence suggesting otherwise. We affirm the district court's granting summary judgment to VBA.

Affirmed.

12