563 So.2d 261 (1990)
BERNARD LUMBER COMPANY, INC.
v.
The LOUISIANA INSURANCE GUARANTY ASSOCIATION.
No. CA 88 1155.
Court of Appeal of Louisiana, First Circuit.
February 23, 1990.
Writ Denied September 28, 1990.
*262 Darryl Foster, New Orleans, for plaintiff-appellee Bernard Lumber Co., Inc.
Henry Terhoeve, Baton Rouge, for defendant-appellant Louisiana Ins. Guar. Ass'n.
Before COVINGTON, C.J., and EDWARDS, LANIER, ALFORD and FOIL, JJ.
FOIL, Judge.
This is an appeal by Louisiana Insurance Guaranty Association (LIGA) from the trial court's granting of a motion for summary judgment in favor of Bernard Lumber Company, Inc. (Bernard), and denial of a motion for summary judgment filed by LIGA. The dispute in this case involves the issue of LIGA's liability as a result of the insolvency of Bernard's primary and excess insurers.

FACTS
Neither party contests the facts of this case. Bernard purchased primary insurance coverage from Northwest Insurance Company (Northwest) for automobile and comprehensive general liability. One policy was effective from July 1, 1982, to July 1, 1983, and another was effective from July 1, 1983, to July 1, 1984. Northwest was not an admitted insurer in Louisiana and thus, claims against it were not subject to coverage by LIGA. Bernard also purchased excess insurance coverage from Mission National Insurance Company (Mission). The two Mission policies bore corresponding effective dates to the two Northwest policies and referenced the Northwest policies as the underlying insurance. Since Mission was an admitted insurer in Louisiana, LIGA provides protection for claims brought under Mission policies. Both Northwest and Mission subsequently became insolvent.
Due to Northwest's insolvency, Bernard paid certain claims against it which arose during the period covered by the Northwest policies. It then brought the instant suit against LIGA,[1] seeking reimbursement *263 for these amounts since Mission was also insolvent. All of said claims are within the limits of the Northwest policies. Bernard contends the Mission policies "drop down" to provide primary coverage for these claims, and, as the obligations of Mission are assumed by LIGA, it in turn becomes responsible for the same. LIGA and Bernard filed cross motions for summary judgment on the question. The trial court found that the language of the Mission policies is ambiguous and must be construed against Mission in favor of coverage. Therefore, the court found that the excess coverage drops down to become primary, and under the facts of this case, coverage is then provided by LIGA. The trial court rendered the following judgments on the two motions:
IT IS ORDERED, ADJUDGED AND DECREED that the motion for summary judgment filed by defendant, The Louisiana Insurance Guaranty Association, be and the same is DENIED.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the motion for summary judgment filed by plaintiff, Bernard Lumber Company, Inc., be and the same is GRANTED, declaring that the policies of Mission National Insurance Company are ambiguous and therefore drop down to provide primary coverage to Bernard Lumber Company, Inc.
LIGA appealed both judgments.
There is serious question as to whether this Court, under its appellate jurisdiction, may reverse the trial court's denial of LIGA's motion for summary judgment. In Genina Marine Services, Inc. v. Arco Oil & Gas Company, 499 So.2d 257 (La.App. 1st Cir.1986), there were cross motions for summary judgment (as in the instant case) and the losing party appealed both judgments (like LIGA herein). This court refused to consider the appeal from the judgment denying the motion for summary judgment because it was not an appealable judgment. See also Towles v. Heirs of Morrison, 428 So.2d 1029 (La.App. 1st Cir.1983).
The proper remedy available to LIGA to review the denial of the summary judgment is to request this court to exercise its supervisory jurisdiction. Louviere v. Byers, 526 So.2d 1253 (La.App. 3d Cir.), writ denied, 528 So.2d 153 (La. 1988). In the present case, both parties, at the oral argument, urged the Court to decide the appeal of both motions for summary judgment under our powers of supervisory jurisdiction. Therefore, we shall do so, and hereby reverse.

LAW
The prime consideration in the interpretation of an insurance policy is to ascertain the true intention of the parties from the language of the policy as a whole. It is well settled that a valid insurance policy is a contract between the insured and the insurer and is thus the law between them. As in the case of other written agreements, the terms and provisions of an insurance contract are to be interpreted in their general and popular meaning. All ambiguities must be construed in favor of the insured and against the insurer. However, where the language of an insurance contract is clear and free of ambiguity, it constitutes the contract between the parties and courts have no authority to change or alter its terms under the guise of interpretation. Radar v. Duke Transportation Inc., 492 So.2d 532, 533-534 (La.App. 3d Cir.1986).

ANALYSIS
In this instance, where the primary insurer became insolvent, the issue of whether or not the excess insurer is liable only for the amount of the claims in excess of the retained limits or whether its coverage drops down to that of the primary insurer is determined by the provisions of the excess policy. We must therefore consider all pertinent provisions of Mission's policies in order to derive the intended meaning.
*264 The coverage provisions of the policies state, in pertinent part:
II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS
As respects occurrences covered under this policy, but not covered under the underlying insurances as set out in the attached schedule or under any other collectible insurance, the Company shall:
(a) defend in his name and behalf any suit against the insured alleging liability insured under the provisions of this policy and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company;
. . . . .
III. LIMIT OF LIABILITY
The Company shall only be liable for the ultimate net loss the excess of either
(a) the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said underlying insurances,
or
(b) the amount as set out in item 2(c) of the Declarations ultimate net loss in respect of each occurrence not covered by said underlying insurances.
(hereinafter called the "underlying limits"):
and then only up to a further sum as stated in item 2(a) of the Declarations in all in respect of each occurrencesubject to a limit as stated in item 2(b) of the Declarations in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the insured.
In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid thereunder, this policy subject to all the terms, conditions and definitions hereof shall
(1) in the event of reduction pay the excess of the reduced underlying limit
(2) in the event of exhaustion continue in force as underlying insurance.
The inclusion or addition hereunder of more than one insured shall not operate to increase the Company's limits of liability beyond those set forth in the Declarations.
The other relevant policy provisions are as follows:
7. ULTIMATE NET LOSS
Except as provided in insuring Agreement II, the term "Ultimate Net Loss" shall mean the total sum which the insured, or his Underlying insurers as scheduled, or both, become obligated to pay by reason of personal injuries, property damage or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest, expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder excluding only the salaries of the insured's or of any underlying insurer's permanent employees.
The Company shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance
. . . . .
L. OTHER INSURANCE
If other valid and collectible insurance with any other insurer is available to the insured covering a loss also covered by this policy, other than insurance that is specifically stated to be excess of this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.
*265 After a thorough and careful examination of Mission's excess policies (which are identical save effective dates and limits of liability) in their entirety, particularly with regard to the above provisions, we find that the trial court erred in determining that their language is ambiguous. On the contrary, we find that the language clearly does not obligate Mission to provide liability coverage under the circumstances presented in this case.
Bernard's argument is grounded on its interpretation of the insurance contract as having a collectibility requirement for the underlying insurance (the Northwest policies). Specifically, it refers to the term "other valid and collectible insurance" contained in the section defining "ultimate net loss"; the phrase "or under any other collectible insurance" used in the "defense" provision; and again, use of the term "other valid and collectible insurance" in the "other insurance" provision. We will address each of these provisions in turn.
The Mission policy defines "ultimate net loss" as the total sum which the insured or the scheduled underlying insurers become obligated to pay, including various listed costs and expenses. The definition concludes that Mission shall not be liable for "expenses" when they are included in "other valid and collectible insurance." Bernard argues that "expenses" must include amounts paid in settlement or satisfaction of judgments and since these "expenses" are not included in other valid and collectible insurance (referring to Northwest's insolvency), Mission (and therefore LIGA) is responsible for the same. We disagree. In Mission National Insurance Company v. Duke Transportation Company, Inc., 792 F.2d 550 (5th Cir.1986), the United States Fifth Circuit Court of Appeals interpreted the identical Mission policy provision as follows:
When the entire section is read in context, it is clear that the phrase "other valid and collectible insurance" refers to any insurance Duke carried in addition to the underlying insurance listed in the schedule contained in the Mission policy, i.e., the Northwest policy. The Mission policy clearly provides that Mission's liability is excess both to occurrences covered by the Northwest policy and to expenses included in any other valid and collectible insurance. Thus, the use of the term "collectible" in no way refers to the Northwest policy ... 792 F.2d at 554.
Next, Bernard asserts that Mission's use of the phrase "or under any other collectible insurance" in the "defense" provision of its insuring agreements can be construed to include a collectibility requirement for the underlying policy. This is not so. In Radar v. Duke Transportation Inc., supra, the court interpreted the identical provision and stated:
... The other collectible insurance referred to in this provision is defined later in the policy as meaning "valid and collectible" insurance with any other insurer available to Duke.... It is important to note that Mission's policy mandates that the other insurance be "valid and collectible", whereas there is no such requirement placed upon the scheduled underlying insurances, i.e., Northwest's policy of insurance. Thus, while the Mission policy specifically requires the "other insurance" to be valid and collectible, no such restriction is placed on the underlying Northwest policy of primary insurance.... 492 So.2d, at 535.
Bernard also relies on the condition paragraph entitled "Other Insurance" and argues that it, too, imposes a collectibility requirement on the underlying insurance. This provision provides that coverage shall be in excess of "other valid and collectible insurance" available to the insured. We find that this language does not imply that the scheduled primary insurance of Northwest can only be part of the underlying limit if it is valid and collectible. We find that the language "valid and collectible" does not refer to the actual payment of a sum of money, but instead refers to the existence of other applicable and available insurance coverage based on the particular claim in question. See Steve D. Thompson Trucking, Inc. v. Twin City Fire Insurance Company, 832 F.2d 309, 310-311 (5th Cir.1987); Holland v. Stanley Scrubbing *266 Well Service, 666 F.Supp. 898, 901 (W.D. La.1987); Radar v. Duke Transportation Inc., supra.
Finally, Bernard directs our attention to McGuire v. Davis Truck Services, Inc., 518 So.2d 1171 (La.App. 5th Cir.), writ denied, 526 So.2d 791 (La.1988). In that case, the court found the wording "amount recoverable" in the limit of liability clause of the policy ambiguous. The court equated the words "amount recoverable" with "collectible", and concluded that LIGA assumed the position of the insolvent primary carrier and that the excess carrier "dropped down" to cover losses in excess of LIGA's statutory limits. Bernard contends the word "covered", as used in the "defense" and "limit of liability" sections of the Mission policies, means the same thing as "recoverable", namely, "collectible." Again, we must disagree. While "recover" refers to the getting back of something lost, "covered", as used in this context, refers to being insured against a specified risk or loss. It has nothing to do with "collectibility", or the ability to take in payment.

CONCLUSION
After examining Mission's entire policy and using the previously enumerated rules of interpretation, we conclude that there is no ambiguity as to coverage. The Mission policies were clearly intended to provide coverage over and above the coverage provided by the primary insurer. This is consistent with the general rule that excess insurance policies provide coverage that begins only after a predetermined amount of primary coverage is exhausted. This underlying coverage reduces the risk that an excess insurer will have to pay for losses incurred by the insured. This reduced risk to the insurer translates into a reduced premium to the insured. Steve D. Thompson Trucking, Inc. v. Twin City Fire Insurance Company, supra, at 310.
Here, Bernard bargained for and purchased a primary insurance policy from Northwest, and an excess insurance policy from Mission. It is clear that it was never the intention of Mission and Bernard that Mission should become Bernard's primary insurance provider in the event Northwest became insolvent. The trial court erred in concluding that the policy was ambiguous and that Mission "dropped down" to provide primary liability coverage when Northwest became insolvent, with the result that LIGA stands in the place of the insolvent insurer Mission.
For the foregoing reasons, the judgment of the trial court is reversed and recast as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the motion for summary judgment by plaintiff Bernard Lumber Company, Inc., is denied; and that the motion for summary judgment by defendant Louisiana Insurance Guaranty Association is granted.
All costs are assessed to Bernard Lumber Company, Inc., appellee.
REVERSED AND RENDERED.
LANIER, J., concurs and assigns reasons.
LANIER, Judge, concurring.
I agree with the majority's treatment of the merits of this case and with the majority's observation that the judgment denying LIGA's motion for summary judgment is not appealable (see La.C.C.P. art. 968). The majority opinion does not address whether or not the judgment granting Bernard's motion for partial summary judgment is appealable.
Bernard filed a motion for partial summary judgment and asked the trial court to declare "that the policies issued by Mission Insurance Company are ambiguous and therefore Bernard Lumber Company, Inc. is entitled to coverage."
The partial summary judgment in favor of Bernard declares that the Mission policy provided primary coverage for Bernard. This judgment does not grant relief, and is not properly a partial summary judgment; this court does not have subject matter jurisdiction under its appellate jurisdiction over this judgment. Med-Trans, Inc. v. Rockwood Ins. Co., Inc., 509 So.2d 602 (La.App. 3rd Cir.1987); Wilkinson v. State *267 Farm Mutual Automobile Insurance Company, 378 So.2d 167 (La.App. 1st Cir. 1979); Smith v. Hanover Insurance Company, 363 So.2d 719 (La.App. 2nd Cir.1978). Cf. Dryades Savings and Loan Association v. Lassiter, 400 So.2d 894 (La.1981); Landry v. John E. Graham & Sons, Inc., 533 So.2d 975 (La.App. 1st Cir.), writ denied, 534 So.2d 431 (La.1988); Stock v. City-Parish of East Baton Rouge, 525 So.2d 675 (La.App. 1st Cir.1988).
Because neither judgment before us is appealable, we do not have appellate jurisdiction to hear this case. La.C.C.P. art. 2162; First Federal Savings & Loan Association of Opelousas v. Manuel, 479 So.2d 379 (La.App. 3rd Cir.1985).
NOTES
[1] LIGA was named as a defendant pursuant to La.R.S. 22:1375, et seq. LIGA is the administrator of the legislatively enacted Insurance Guaranty Fund. The purpose of the fund is "to provide a mechanism for the payment of covered claims ... and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer...." La.R.S. 22:1376.