893 So.2d 133 (2005)
Betty WINN, Plaintiff-Respondent
v.
Samuel NATION, et al., Defendant-Applicant.
No. 39229-CW.
Court of Appeal of Louisiana, Second Circuit.
January 26, 2005.
Rehearing Denied February 24, 2005.
*134 Wiener, Weiss & Madison, by Michael Allyn Stroud, Ronald J. Miciotto, Shreveport, for Plaintiff-Respondent.
Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell, by Robert A. Dunkelman, Shreveport, for Louisiana Restaurant Association.
Lunn, Irion, Salley, Carlisle & Gardner, by James Alex Mijalis, Shreveport, for Applicant, Dakota Specialty Ins. Co.
Mayer, Smith & Roberts, by Frank K. Carroll, Shreveport, for Samuel Nation and Liberty Mutual Ins. Co.
Office of Harold G. Toscano, by Steven Curtis Mitchell, Baton Rouge, for Continental Ins. Co.
Before STEWART, GASKINS and LOLLEY, JJ. WILLIAMS, STEWART, GASKINS, PEATROSS, and LOLLEY, JJ.
LOLLEY, J.
This matter comes before the court on the writ application of Dakota Specialty Insurance Company, seeking review of a judgment of the First Judicial District Court, Parish of Caddo, State of Louisiana, denying the motion for summary judgment filed by Dakota Specialty. The writ application by Dakota Specialty was granted by a panel of this court and is now before us for consideration. For the following reasons, we affirm the trial court's judgment.

FACTS
The facts in this case are largely undisputed. On December 6, 2001, Betty Winn was operating her personal vehicle while in the course and scope of her employment for River Cities Gaming, Inc. On that day, she was involved in a two-vehicle accident as she returned to her office after making a bank deposit for her employer. Winn was driving her personal vehicle for this work-related errand, because the employer's vehicle would not start due to mechanical difficulties. The other driver involved in the accident was Samuel Nation, who was insured by Liberty Mutual Insurance Company. Winn named both as defendants in her lawsuit, as well as Continental Insurance Company, which provided UM coverage on her vehicle. Dakota Specialty *135 insured Winn's employer and was also named a defendant in the lawsuit.
Winn sought UM benefits under the Dakota Specialty policy. In the trial court, Dakota Specialty filed a motion for summary judgment asserting that its policy, as a matter of law, did not provide Winn with UM coverage in connection with her operation of her personal vehicle. The trial court denied Dakota Specialty's motion, which is now the issue before us.

DISCUSSION
On appeal, Dakota Specialty artfully argues only one issue: where the operator of a vehicle does not qualify as an "insured" under the liability section of the policy and is further specifically excluded from coverage under the UM section of the policy, does the policy of insurance provide UM coverage to the operator of the vehicle? As stated, the trial court denied Dakota Specialty's motion for summary judgment on this issue, which we conclude was not in error for the following reasons.
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993); Central Louisiana Elec. Co. v. Westinghouse Elec. Corp., 579 So.2d 981, 985 (La.1991). The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. See La. C.C. art. 2045. The parties' intent as reflected by the words in the policy determines the extent of coverage. Pareti v. Sentry Indem. Co., 536 So.2d 417 (La.1988). Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. La. C.C. art. 2047; Breland v. Schilling, 550 So.2d 609, 610 (La.1989).
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Lindsey v. Poole, 579 So.2d 1145, 1147 (La.App. 2d Cir.1991), writ denied, 588 So.2d 100 (La.1991).
Where the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. See La. C.C. art. 2046; see also Schroeder v. Bd. of Sup'rs of Louisiana State University, 591 So.2d 342, 345 (La.1991). When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation. Bernard Lumber Co., Inc. v. Louisiana Ins. Guar. Ass'n, 563 So.2d 261, 263 (La.App. 1st Cir.1990), writ denied, 566 So.2d 981 (La.1990). If an ambiguity remains after applying the general rules of contractual interpretation to an insurance contract, the ambiguous contractual provision is construed against the insurer who furnished the contract's text and in favor of the insured. Succession of Fannaly v. Lafayette Ins. Co., XXXX-XXXX (La.01/15/02), 805 So.2d 1134, 1138, citing, La. C.C. art. 2056.
All at the same time, the language of this policy appears clear and then ambiguous. Either way, we can conclude in favor of finding UM coverage for Winn. First, we look to the UM portion of the policy, specifically, section B entitled, "Who is An Insured." As often happens with insurance contracts, the attempt to answer this simple question raises more questions. Subsection 3 of that portion of the policy states that an insured is "[a]nyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' The covered `auto' must be out of service
*136 because of its breakdown, repair, servicing, loss or destruction." Exclusions to this section state that UM coverage will not apply to "`[b]odily injury' sustained by an `insured' while `occupying' or struck by a vehicle owned by the `insured' that is not a covered `auto.'" Thus, we are led to the next query: was Winn driving a "covered auto" for UM purposes?
Because the UM endorsement does not define a "covered auto," we must turn to the main policy to determine whether the vehicle driven by Winn was a "covered auto" and afforded UM coverage. Section I of the policy is entitled "Covered Autos." In that section there are three classes of covered autos: subsection A listing specific designations of autos for use on the declarations page; subsection B for owned autos acquired after the policy's commencement; and subsection C for "certain trailers, mobile equipment and temporary substitute autos." (Emphasis added). That subsection specifically states that the following are considered to be "covered autos":
If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:
3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:
a. Breakdown;
b. Repair;
c. Servicing;
d. "Loss"; or
e. Destruction
Clearly, the vehicle driven by Winn and involved in the accident would be considered a temporary substitute under this definition.
This is where the clarity ends and the ambiguity sets in. Dakota Specialty points out that for purposes of UM coverage, the declarations page of the policy lists only those vehicles fitting the description under "Symbol 7."[1] This assertion correctly reflects what is stated on the schedule of coverages page and is one bases for Dakota Specialty's position that no coverage applies, which would be a narrow interpretation of the policy. However, as noted, the UM endorsement contains no definition of a covered auto, which is the crux of determining whether UM coverage applies in this situation. We are constrained to use the liability portion of the policy to make that determination (i.e., of what is a "covered auto") and see whether the vehicle fits under the definition of the policy. Although the declarations page notes that UM coverage is provided for Symbol 7 vehicles, the policy further defines "covered autos" as being the type driven by Winn and the UM endorsement specifically includes temporary substitutes for "covered autos." Thus, in answering the question under the UM portion of the policy, "was Winn `occupying' a covered `auto' or a temporary substitute for a covered `auto [,]' [which was] ... out of service because of its breakdown, repair, servicing, loss or destruction," turning to the policy for a definition of what a "covered auto" is, we answer "yes." This would appear to be inconsistent with the schedule of coverages  an ambiguity, perhaps?[2] As this would appear to be an ambiguity in the *137 policy, both our statutory law and jurisprudence would favor interpreting the policy in favor of the insured and coverage. We will follow that line of reasoning and conclude that the trial court's denial of Dakota Specialty's motion for summary judgment was not in error.

CONCLUSION
For the foregoing reasons, we affirm the trial court's judgment which denied Dakota Specialty's motion for summary judgment and assess it with costs associated herein.
AFFIRMED.

APPLICATION FOR REHEARING
Rehearing denied.
NOTES
[1] That being "only those `autos' described in ITEM THREE of the declarations for which a premium charge is shown...." "ITEM THREE" includes "[o]nly the private passenger `autos' you own."
[2] Ambiguous is defined as "capable of being understood in two or more possible senses or ways." Merriam-Webster On-line Dictionary.2005.