990 So.2d 751 (2008)
Earl ADAMS, Plaintiff-Appellee
v.
Milton FROST, et al., Defendants-Appellants.
No. 43,503-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 2008.
Rehearing Denied September 11, 2008.
*752 Richard L. Fewell, Jr., for Defendant-Appellant, Milton Frost.
Law Offices of Jim Norris, by William M. Norris, III, West Monroe, for Plaintiff-Appellee, Earl Adams.
Breithaupt, Dunn, Dubos, Shafto, & Wolleson, by Michael L. DuBos, Monroe, Cotton, Bolton, Hoychick & Doughty, by John Hoychick, Jr., Rayville, for Defendant-Appellee, State Farm Fire and Casualty Co.
Nelson, Zentner, Sartor & Snellings, by George M. Snellings, IV, Brandi N. Traylor, Monroe, for Defendants-Appellees, America First Ins. Co. and Calhoun Water System, Inc.
Before BROWN, STEWART and GASKINS, JJ.
STEWART, J.
Defendant and third party plaintiff Milton Frost is appealing a summary judgment in favor of third party defendants, Calhoun Water System, America First Insurance Company, and State Farm Fire & Casualty Co. For the reasons set forth below, we reverse and remand the matter to the trial court for further proceedings.

FACTS
This case involves an altercation that occurred at a Calhoun Water System ("Calhoun") well. On October 14, 2002, Milton Frost ("Frost"), a board member of Calhoun, was performing manual labor on the water system's pipes located on the water system's property. Earl Adams ("Adams"), the owner of the adjacent property, was angry about Calhoun's boundary line, which abutted Adams' property. Adams walked from his trailer home, across his property, and entered the property owned by Calhoun to confront Frost about the property dispute. After the two exchanged words, Adams punched Frost in the mouth, knocking him to the ground and rendering him unconscious. When Frost regained consciousness, Adams began making threatening statements, including invoking his uncle's name, whom Adams had shot and killed. Fearing for his life, Frost struck Adams with the wooden handle of either an axe, sledgehammer or mallet several times on the arms, and at least once on the head, causing injury to Adams.
Adams filed suit on October 9, 2003, naming Frost as a defendant. On April 25, 2007, Frost filed a third party demand against Calhoun, Calhoun's insurer, America First Insurance Company ("AFIC"), and State Farm Fire & Casualty Co. *753 ("State Farm"), Frost's homeowner's policy carrier. On September 4, 2007, AFI and Calhoun, moved for summary judgment on the basis that there was no dispute of material fact that the commercial liability policy issued to Calhoun, did not afford coverage to plaintiff for the incident in question. State Farm also moved for summary judgment on the basis that State Farm did not have a duty to defend Frost. On November 19, 2007, the trial court dismissed all of the third party defendants by way of summary judgment, prompting Frost to file this appeal.

DISCUSSION
The primary issue before us is whether the trial court erred in granting summary judgment in favor of Calhoun, AFIC, and State Farm. More particularly, we must determine whether the trial court incorrectly determined that the commercial policy issued by AFIC to Calhoun does not afford coverage to Frost, in that Frost cannot be classified as an employee of Calhoun Water System. We must also determine whether the trial court erred in determining that State Farm had no duty to defend Frost because the acts in question committed by Frost were intentional, willful, and of the sort which preclude a duty to defend.
In order to reverse the trial court's decision, this court must find on de novo review that the record reveals a genuine issue of fact which precludes summary judgment as a matter of law. Appellate courts review summary judgments de novo using the same criteria that govern a district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Costello v. Hardy, XXXX-XXXX (La.1/21/04), 864 So.2d 129. A court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2); Mosley v. Temple Baptist Church of Ruston, Louisiana, Inc., 40,546 (La.App. 2nd Cir.1/25/06), 920 So.2d 355.
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to show that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. Winn v. Nation, 39,229 (La.App. 2nd Cir. 1/26/05), 893 So.2d 133; Smith v. Matthews, 611 So.2d 1377 (La.1993). The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. See La. C.C. art. 2045. The parties' intent as reflected by the words in the policy determines the extent of the coverage. Pareti v. Sentry Indemnity Co., 536 So.2d 417 (La.1988). The words of a contract must be given *754 their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter. La. C.C. art. 2047.
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Lindsey v. Poole, 579 So.2d 1145 (La.App. 2nd Cir. 1991) writ denied, 588 So.2d 100 (La.1991). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. Where the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Schroeder v. Board of Supervisors of Louisiana State University, supra. If an ambiguity remains after applying the general rules of contractual interpretation to an insurance contract, the ambiguous contractual provision is construed against the insurer who furnished the contract's text and in favor of the insured. Succession of Fannaly v. Lafayette Insurance Co., XXXX-XXXX (La.1/15/02), 805 So.2d 1134, citing, La. C.C. art. 2056.
In the present case, Calhoun and AFIC argue that summary judgment is applicable because Frost is not entitled to a defense or indemnification under AFIC's policy. An insurer seeking to avoid coverage through summary judgment bears the burden of proving some provision or exclusion applies to preclude coverage. Simmons v. Weiymann, 05-1128 (La.App. 1st Cir.8/23/06), 943 So.2d 423.
Section II of the Commercial General Liability Form included in AFIC's policy addresses who qualifies as an "insured." Subsection II(1)(d) states in pertinent part:
If you are designated in the Declarations as:
d. an organization other than a partnership, joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.
Additionally, Section II(2)(a) of the Commercial General Liability Form included in AFIC's policy states in pertinent part:
Each of the following is also an insured:
a. Your "employees," other than either your "executive officers" (If you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts committed within the scope of their employment by you or while performing duties related to the conduct of your business.
Section A(1) of the Crime General Provisions-Loss Sustained Form included in AFIC's policy states in pertinent part:
A. General Exclusions
We will not pay for loss as specified below:
1. Acts Committed By You or Your Partners
Loss resulting from any dishonest or criminal acts committed by you or any of your partners whether acting alone or in collusion with other partners.
Section C of Crime General Provision-Loss Sustained form included in AFIC's policy entitled "General Definitions," contains the following applicable language:
C. General Definitions
1. "Employee" means:

*755 a. Any natural person:
(1) While in your service (and for 30 days after termination of service); and
(2) Whom you compensate directly by salary, wages or commissions; and
(3) Whom you have the right to direct and control while performing services for you; or
(4) Any natural person who is furnished to you to:
(1) Substitute for a permanent "employee" on leave; or
(2) Meet seasonal or short-term work load conditions; while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises."
But "employee" does not mean any:
(1) Agent, broker person leased to you by a labor leasing firm, factor, commission merchant, consignee, independent contractor or representative of the same general character; or
(2) Director or trustee except while performing acts coming within the scope of the usual duties of an employee.
Calhoun and AFIC assert that Frost was not an employee of Calhoun at the time of the incident, nor was Frost a named insured in AFIC'S commercial liability policy. Cecil Graham, a representative of Calhoun, testified in his deposition that Frost was not an employee of Calhoun, nor did he receive a salary. Frost conceded in his deposition that he was not an employee of Calhoun. However, Frost was a board member of Calhoun at the time the incident occurred. Most importantly, he was performing volunteer manual labor on the water system's pipes located on the water system's property at the time the altercation occurred. Even though Frost was not exercising his duties as a board member of Calhoun when the altercation ensued, the manual labor he performed on the water system's property qualifies as acts coming within the usual duties of an employee of Calhoun.
The policy wording at issue is clear and unambiguously expresses the parties' intent. Because the policy wording is clear and explicit and cannot lead to any absurd consequences, we cannot make any further interpretation in search of the parties' intent. AFIC's policy must be enforced as written.
As a board member performing manual labor on the water system's pipes, Frost is clearly covered as a "director or trustee performing acts coming within the usual duties of an employee" under the language of AFIC's policy. Therefore, the trial court erred in granting the summary judgment in favor of Calhoun and AFIC after finding that the commercial policy issued to Calhoun does not provide coverage to Frost. We find that because Frost clearly can be classified as an employee of Calhoun under the AFIC policy.
State Farm avers that the summary judgment was properly granted because it had no duty to defend Frost. State Farm asserts that the acts in question committed by Frost were "intentional, willful and of the sort which preclude a duty to defend." Similarly, Calhoun and AFIC argued in the alternative that it had no duty to defend pursuant to the Intentional Acts Exclusion of the AFIC policy.
*756 An insurer's duty to defend lawsuits against its insured is broader than its liability for damage claims. Mossy Motors, Inc. V. Cameras America, 04-0726 (La.App. 4th Cir.3/2/05), 898 So.2d 602. The issue of whether a liability insurer has the duty to defend civil action against its insured is determined by the application of the "eight-corners rule," under which an insurer must look to the "four-corners" of the plaintiff's petition and the "four corners" of its policy to determine whether it owes that duty. Vaughn v. Franklin, 00-0291 (La.App. 1st Cir.3/28/01), 785 So.2d 79. Under this analysis, the factual allegations of the plaintiff's petition must be liberally interpreted to determine whether they set forth grounds which raise even the possibility of liability under the policy. State Farm must look to the "four corners" of the plaintiff's petition and the "four corners" of its policy to determine whether it owes a duty to Frost.
In his petition, Adams alleged that an argument ensued between he and Frost regarding Calhoun's property line. After the argument ended, Adams stated that he proceeded back to his home. Adams further alleged that as he retreated to his home, Frost crossed the fence onto his property and struck him.
State Farm's policy provision for liability coverage and personal liability states:
If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:
1. pay up to our legal limit for damages for which the insured is legally liable; and
2. Provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals or limits our liability.
The policy further defines "occurrence" as the following:
7. "occurrence," when used in Section II of this policy, means an accident, including exposure to conditions, which results in:
a. bodily injury; or
b. property damage;
The exclusions in the insurance policy that pertain to the personal liability and medical sections are as follows:
1. Coverage L and Coverage M do not apply to:
a. Bodily injury or property damage:
(1) which is expected or intended by the insured; or
(2) to any person or property which is the result of willful and malicious acts of an insured.
Even though a plaintiff's petition may allege numerous claims for which coverage is excluded under an insurer's policy, a duty to defend may nonetheless exist if there is at least a single factual allegation in the petition under which coverage is not unambiguously excluded. Motorola, Inc. v. Associated Indemnity Corporation, 02-0716 (La.App. 1st Cir.6/25/04), 878 So.2d 824, 836 writs denied, 04-2314, 2323, 2326, 2327 (La.11/19/04), 888 So.2d 207, 211 and 212. Thus, assuming the factual allegations of the petition are true, if there could be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Prestage v. Clark, 97-0524 (La.App. 1st Cir.12/28/98), 723 So.2d 1086, 1092, writ denied, 99-0234 (La.3/26/99), 739 So.2d 800.
*757 As stated above, Adams asserted in his petition that an argument ensued between he and Frost. Adams failed to include any details of the argument in his petition. Nevertheless, one can be certain that Adams was involved in the argument. Adams also admitted that he approached Frost with the intent to confront him about the property dispute.
Frost asserts that State Farm coverage should be afforded to him under his homeowner's policy because he was acting in self-defense. Frost stated he was defending himself at the time the incident occurred. Frost also mentioned Adams' history of violence, including threatening church members at gun point and killing his uncle. Adams also owns several guns.
Even though Adams petition may allege numerous claims for which coverage is excluded under an insurer's policy, a duty to defend may nonetheless exist if it is proven that Frost did not commit willful and malicious acts. Under the facts presented, there is clearly an issue of material fact about whether Frost was acting in self-defense. We conclude that the trial court erred in granting summary judgment in this instance.

CONCLUSION
For the aforementioned reasons, we conclude that the trial court erred in granting summary judgment in favor of Calhoun Water System, American First Insurance Company, and State Farm. Accordingly, the judgment of the trial court is hereby reversed and the matter is remanded to the trial court for further proceedings. Costs are assessed to the appellees.
REVERSED AND REMANDED.

APPLICATION FOR REHEARING
Before BROWN, STEWART, GASKINS, CARAWAY and LOLLEY, JJ.
Rehearing denied.