CARAWAY, J.
 

 LA mobile home seller filed a third party demand against its general liability insurer
 
 *1036
 
 urging the insurer’s duty to defend the seller in a suit filed by the mobile home buyers which included claims of redhibition, breach of contract and negligent repairs. The insurer denied coverage, and both the seller and insurer sought summary judgments. The trial court granted summary judgment in favor of the insurer finding that it had no duty to defend based upon lack of coverage for the claims made against the seller by the home buyers. The seller appeals. We affirm.
 

 Facts
 

 On October 6, 2006, James and Jessie Sibley (hereinafter “Plaintiffs”) purchased a manufactured home from HomesPlus Manufactured Housing, LLC (“Homes-Plus”). The dwelling was manufactured by Deer Valley Homebuilders Inc. Homes-Plus was responsible for preparing the site, foundation and driveway and delivered the home to Plaintiffs’ property. HomesPlus also installed an external air compressor to supplement the existing heat and air system. The Plaintiffs immediately began reporting problems with the home to HomesPlus and Deer Valley. Each company sent crews to the site to address the reported problems.
 

 Ultimately on August 24, 2007, Plaintiffs filed suit against Deer Valley and Homes-Plus raising claims of redhibition, breach of contract and warranty and negligent repair. The petition listed 55 specific manufacturing defects as well as “other defects listed in repair orders or discovered through discovery.” The list included various missing and broken items, complained )2of holes and cracks in various places of the home, mold smell throughout the house, buckling of floors and cabinets, lack of tile and requested adjustments, painting and caulking on certain items. The Plaintiffs sought rescission of the sale or a reduction in the purchase price.
 
 [1]
 

 On March 3, 2008, HomesPlus filed a third party demand against its general liability insurer, Northfield Insurance Company (“Northfield”), seeking performance of its obligations or indemnification under the issued general liability insuring agreements. The third party demand made no allegation of fact pertaining to the sale and delivery of the manufactured home other than the claims made by Plaintiffs. Northfield denied coverage under the policies and sought a summary judgment on February 18, 2009. Northfield sought dismissal of the third party demand as a matter of law on the grounds that it had no duty to defend redhibition claims that did not constitute “property damage” or an “occurrence” under the insuring agreement and claims that fell within the “your work” and “your product” exclusions.
 

 Northfield attached to its motion a copy of Plaintiffs’ petition and copies of two insuring agreements (hereinafter collectively the “CGL Policy”) which were issued by Northfield to HomesPlus during the time of the subject events. Specifically, Northfield relied upon the following language contained in the policies in support of its position:
 

 |81. Insuring Agreement
 

 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily
 
 *1037
 
 injury,” or “property damage” to which this insurance applies ...
 

 b. This insurance applies to “bodily . injury” and “property damage” only if:
 

 (1) the “bodily injury” or “property damage” is caused by an “occurrence” that takes place in the “covered territory.”
 

 The insuring agreement defined an “occurrence” as an accident, including continuous or repeated exposure to substantially the same general harmful conditions. “Property damage” was defined as physical injury to tangible property, including all resulting loss of that property.
 

 Further, Northfield claimed that the following exclusions applied to preclude coverage of Plaintiffs’ claims:
 

 2. Exclusions
 

 This insurance does not apply to:
 

 [[Image here]]
 

 k. Damage to Your Product
 

 “Property damage” to “your product” arising out of it or any part of it.
 

 l. Damage to Your Work “Property damage” to “your work” arising out of it or any part of it and included in the “products-eompleted operations hazard.”
 

 This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
 

 The definitions section of the policy defines “your product” as:
 

 a. Means:
 

 (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
 

 (a)You;
 

 (b) Others trading under your name; or
 

 (c) A person or organization whose business or assets you have acquired; and
 

 |4(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
 

 [[Image here]]
 

 b. Includes
 

 (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of “your product”; and
 

 (2) The providing of or failure to provide warnings or instructions.
 

 c. Does not include vending machines or other property rented to or located for the use of others but not sold.
 

 The policy further defines “your work” as follows:
 

 a. Means:
 

 (1) Work or operations performed by you or on your behalf; and
 

 (2) Materials, parts or equipment furnished in connection with such work or operations.
 

 b. Includes
 

 (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of “your work”, and
 

 (2) The providing of or failure to provide warnings or instructions.
 

 HomesPlus opposed Northfield’s summary judgment and attached the affidavit of the owner of HomesPlus, Jeff Foote. Foote stated that Northfield did not defend his company at the arbitration proceedings which contained evidence that
 
 *1038
 
 “was not exclusive to workmanlike defects.” Foote alleged that “HomesPlus was accused of causing multiple items of defect.... Testimony was given regarding potential damage to the home during transport involving the vent pipe and the eaves.... Evidence was not entered regarding the presence of mold in the home.” Foote’s affidavit contained a copy of the inspection report issued by Harold Mouser, investigator for Deer Valley. Mouser addressed 13 complaints generally | -relating to unfinished and disconnected items, loose fixtures and improper sealing. Item 8 related to the air-conditioning system and stated as follows:
 

 The whole-house ventilation system was not properly installed to the interior heating, ventilation, and air-conditioning system (HVAC). This appears to be an on-site installation issue regarding the installation of air-conditioning on-site.
 

 It appears after the installation of the a/c unit the installer failed to re-install the hose to the intake point of the appliance. The connection should be made.
 

 Items 9 and 10 related to the HVAC system as well. Item 9 reported that the HVAC blower:
 

 [D]oes not contain a listing and/or certification that could be identified to see if compatible with the interior air handler and/or the outside a/c unit. This is an on-site installation issue.
 

 The homeowner stated that this blower was exchanged by the dealer after a complaint of the lack of proper airflow within the home, difference in temperatures between some rooms. The blower certification and/or listing should be presented to show compatibility with the entire unit.
 

 HomesPlus’s opposition also contained a copy of the Final Award of Arbitrator which concluded that the majority of complained-of defects were the responsibility of Deer Valley and that the work performed by HomesPlus was not defective “with the sole exception being the blower unit for the heating/cooling unit ... more in the nature of a repair.” HomesPlus also included a copy of Plaintiffs’ responses to interrogatories. Therein, Plaintiffs complained about problems with siding, keys which would not work, leaks under the home, small bath, master bath and kitchen and outrageous utility bills.
 

 | ^Attaching Foote’s affidavit and the Plaintiffs’ responses to interrogatories in support thereof, HomesPlus filed its own Motion for Summary Judgment on April 9, 2009.
 

 Trial of the cross motions for summary judgment occurred on June 6, 2009. Hom-esPlus argued that Northfield had a duty to provide a defense because several allegations in Plaintiffs’ petition went beyond redhibition. Further, HomesPlus urged that the petition’s allegations were nonexclusive, leaving itself open to further allegations through discovery, expert reports and the arbitration proceedings.
 

 After hearing the arguments of counsel, the trial court took the matter under advisement and ultimately rendered judgment in favor of Northfield finding no duty to defend. This appeal ensued with Hom-esPlus’s principal assignment of error presented as follows:
 

 Did the trial court commit error in concluding that the “your work” and “your product” exclusions precluded coverage of Plaintiffs’ claims against appellant insured where the claims included damages allegedly caused by other parties and indirect property damage beyond the definitions of “your work” and “your product” as set forth by the Louisiana Supreme Court and this Court in
 
 Supreme Services & Speciality Co. v. Greer,
 
 2006-1827 (La.5/22/07), 958 So.2d
 
 *1039
 
 634 and
 
 Broadmoor Anderson v. National Union Fire Ins. Co. Of Louisiana,
 
 40,096 (La.App. 2 Cir. 9/28/05), 912 So.2d 400?
 

 Discussion
 

 The insurer’s duty to defend suits brought against its insured is determined by the allegations of the plaintiffs petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage.
 
 Elliott v. Continental Cas. Co.,
 
 06-1505 (La.2/22/07), 949 So.2d 1247;
 
 Meloy v. Conoco, Inc.,
 
 504 So.2d 833, 838 (La.1987);
 
 American Harm Assur. Co. v. Czarniecki,
 
 255 La. 251, 230 So.2d 253 (1969). Accordingly, the insurer’s obligation to defend suits against its insured is generally broader than its obligation to provide coverage for damage claims.
 
 Elliott, supra.
 
 Thus, if, assuming all of the allegations of the petition to be true, there would be both coverage under the policy and liability of the insured to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit.
 
 Id.
 
 This review of the petition and the policy has been referenced as the “four corners” rule for the determination of the existence of the duty to defend.
 
 Adams v. Frost,
 
 43,503 (La.App.2d Cir.8/20/08), 990 So.2d 751,
 
 writs denied,
 
 08-2438, 08-2465 (La.1/30/09), 999 So.2d 755. An insurer’s duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy.
 
 Meloy, supra.
 

 A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any, show there is no genuine issue of material fact such that the mover is entitled to judgment as a matter of law. The burden is on the mover to establish that no material fact issues exist. Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted.
 
 Elliott, supra,
 
 citing
 
 Reynolds v. Select Properties, Ltd.,
 
 93-1480 (La.4/11/94), 634 So.2d 1180.
 

 Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of |sthe policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded.
 
 Elliott, supra.
 
 Appellate courts review summary judgments
 
 de novo
 
 under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The parties’ intent, as reflected by the words of the policy, determines the extent of coverage. Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured.
 
 Id.
 

 The purpose of liability insurance is to afford the insured protection from damage claims. Policies therefore
 
 *1040
 
 should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer’s obligation is strictly construed against the insurer, and, if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. |aIt is equally well settled, however, that subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy.
 
 Elliott, supra.
 

 The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties.
 
 Elliott, supra, citing Commercial Union Insurance Co. v. Advance Coating Co.,
 
 351 So.2d 1183, 1185 (La.1977).
 

 Thus, for summary judgment to be warranted there must be no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded.
 
 Elliott, supra.
 

 The above-noted and subject exclusions are often collectively called the “work-product” exclusions which reflect the intent of the insurance industry to avoid the possibility that coverage under a CGL Policy will be used to repair and replace the insured’s defective products and faulty workmanship. The CGL Policy is not intended as a guarantee of the quality of the insured’s products or work. William S. McKenzie & H. Alston Johnson III, 15
 
 Louisiana Civil Law Treatise
 
 (3d Ed.2006) § 195, at 554-555. Louisiana courts have consistently held that the “work product” exclusion eliminates coverage for the cost of repairing or replacing the | Tninsured’s own defective work or defective product. The specific “your work” exclusion applies only to property within the “produets-completed operations hazard,” meaning that it is generally applicable after the work is complete.
 
 [2]
 
 This exclusion does not apply to work performed on behalf of the insured by subcontractors.
 
 Id.
 
 at 562.
 

 In this case, the so-called “four corners” rule, when applied at the time that Northfield was brought into this action, requires us to examine the four corners of the Plaintiffs’ petition, Homes-Plus’s third party demand, and the CGL Policy to determine if coverage might apply for the alleged claims against Homes-Plus. In particular, HomesPlus asserts that the coverage issue concerns the misapplication by the trial court of “your product” and “your work” exclusions in the CGL Policy as such exclusions pertain to HomesPlus’s sale, delivery and repair of the manufactured home. Our review of the “four corners” of the Plaintiffs’ petition, however, confirms to us that the claims presented were directed entirely at the quality of HomesPlus’s product and its work operations performed in the site preparation and delivery of the manufactured home. This would place the Plaintiffs’ claims in the exclusions from coverage.
 

 
 *1041
 
 Moreover, the petition of HomesPlus for its third party demand for the duty to defend did not expand upon the fact allegations of the Plaintiffs’ petition so as to show that those claims raised allegations of liability falling under the coverage of the CGL Policy. In particular, Homes-Plus’s present | ¶ [argument that other parties or subcontractors performed some of the allegedly deficient work or repairs is not revealed within the four corners of the pleadings. Even in the additional discovery documents and reports of the arbitration proceedings which HomesPlus only filed after Northfield’s motion for summary judgment, there is no clear indication of a subcontractor hired by HomesPlus whose work may have been challenged. In the Plaintiffs’ action, HomesPlus is the named defendant whose work or repairs are challenged, not the work of its unidentified subcontractors. Thus, the subcontractor exception to the “your work” exclusion was not shown to have warranted coverage or the duty to defend. More specifically, from the “four corners” of the pleadings, Northfield was not advised of the potential for any such subcontractor claim.
 

 Accordingly, based upon the analysis required by the jurisprudence for an assessment of the insurer’s duty to defend, we find no error in the trial court’s judgment and affirm that judgment. Costs of appeal are assessed to appellant.
 

 AFFIRMED.
 

 [1]
 

 . Plaintiffs demanded arbitration in November of 2007. The arbitration hearing was held on March 6, 2009, and the final arbitration award was handed down on March 30, 2009. Northfield Insurance Company, appel-lee, did not participate in the proceedings which cast HomesPlus with $475.00 (and 10% of costs) "as a reduction in the purchase price based upon the relative cost to repair the redhibitory defects" relating to Homes-Plus's repair of the heating/cooling unit.
 

 [2]
 

 . The products hazard definition allows generally for coverage to property damage arising out of the insured product. A work product exclusion precludes recovery for damage to the product itself. Coverage remains for things like personal injury and other property damage.
 
 Supreme Services and Specialty Co. v. Sonny Greer, Inc., supra.