MOORE, J.
h USAgencies Casualty Insurance Company appeals a judgment ordering it to pay Joey Hunter $8,905.07, the salvage value of his truck, after an accident in which the truck was a total loss and USA-gencies paid off Hunter’s mortgage lender in accord with the insurance policy. We reverse and render.

Factual and Procedural Background

Hunter, a resident of Monroe, bought a new Toyota Tundra in February 2009. Although he placed the title and took out the loan in his own name, he went to the USAgencies office and added the Tundra to an existing personal auto policy on which his wife, Bathsheba, was the only named insured. At the lender’s request, Hunter also purchased “gap” insurance to pay off the full mortgage if the vehicle was worth less than the loan balance at the time of loss.
In early July 2009, en route to his construction job in Beaumont, Texas, Hunter fell asleep at the wheel, crossed the center-line and collided with a truck towing a horse trailer. The Tundra was badly damaged.
Hunter testified that he promptly called USAgencies to report the accident, but he never heard back from them or received any documents concerning the claim. He also testified that by the time of the accident, he and Bathsheba had separated and she relocated to Houston, Texas, but he did not advise USAgencies of this change.
DMA, an adjuster retained by USAgen-cies, determined that the Tundra was a total loss. In late August 2009, DMA sent a claim packet to Bathsheba at her Houston address. This included estimates of the truck’s pre-accident and salvage value, and a Texas DMV power of attorney granting USAgencies authority to sell the salvage. Someone — it was never |2disclosed who — signed Hunter’s name to the power of attorney, which was not notarized or witnessed. Nevertheless, acting on it, USAgencies sold the salvage for $8,905.07 and paid the mortgage lender the appraised value of the Tundra, less Hunter’s $500 deductible, a total of $24,525.00. The “gap” insurer paid off the balance of the loan, as the lender released the title to USAgencies.
Hunter testified that after months of frustrating efforts to contact USAgencies, he finally got through and somebody told him that they had settléd the claim in full and sold the salvage. Hunter was indignant, insisting that he never authorized the sale and would have wanted to keep the salvage himself.
Hunter filed this suit in Monroe City Court in June 2010, alleging that USAgen-cies used a forged power of attorney to sell the salvage. He demanded the lost value of the salvage, lost use, consequential damages, and penalties and attorney fees for bad faith failure to settle the claim.
USAgencies answered with denials and filed a third-party demand against Hunter’s ex-wife, Bathsheba.[1] Mail to her *1010 Houston address, however, was returned “unclaimed” and “unable to forward”; she did not participate in the litigation. On the merits, USAgencies argued that Hunter was not the policyholder; Bathsheba was, and the company complied with all its obligations by handling the claim through her.

Action of the Trial Court

The matter was tried in September 2012. Hunter testified as outlined |sabove. This was his first time to buy a vehicle on his own, and he claimed he did not understand the significance of adding the truck to an existing policy on which he was not the policyholder; he was more interested in getting collision and “gap” coverage. He was in a great hurry when he visited USAgencies’ office, as he had to leave early the next day for his shift in Beaumont. He was not aware if Bathsheba went to the USAgencies office the next morning to complete the paperwork on the policy, but he did not deny that her initials and signature appeared on the declarations page and UM rejection form. He admitted that he never advised USAgen-cies that Bathsheba had moved to Houston. He was adamant that he did not authorize the sale of the salvage, and he never would have done so because he felt he could repair it. He showed that the power of attorney was not notarized or witnessed. He demanded the value of the salvage, $8,905.07, and 3$ months’ lost use of the truck. He apparently abandoned his claim for damages arising from mishandling the insurance claim.
The only other witness was Mark Ack-ley, a litigation specialist for one of USA-gencies’ subsidiaries and a longtime adjuster, called by Hunter as an adverse witness. Ackley stated that Hunter was the title and registered owner of the truck, that the lender actually held the title, and that as a matter of practice nobody can sell a vehicle without the owner’s signature, which was not present on this power of attorney. He testified, however, that this power of attorney was a Texas document and perfectly legal under Texas law. On cross-examination, Ackley added that US-Agencies had paid off the loan under its collision coverage (as well as settling the liability claim with the driver into whom Hunter collided), so Hunter had sustained no actual |4loss. He also testified that under the policy, if the vehicle is a total loss, the salvage becomes the property of the insurer, so Hunter had to transfer the title anyway. In his 33 years of experience, Ackley never knew of a lender that allowed an insured to keep the wrecked car in lieu of payment from the insurer. Finally, Ackley testified that USAgencies dealt exclusively with Bathsheba because she was the named insured.
After taking the case under advisement, the city court issued reasons for judgment finding that under La. R.S. 32:705, any transfer of title of a motor vehicle must be before a notary and two witnesses; the instant power of attorney lacked these formalities, and Hunter never gave anybody authority to assign his title. “The mere act of insuring a vehicle does not ipso facto equate to ownership and the authority to devolve title to the vehicle.” The court found “nothing in the record via testimony, exhibits, or affidavits that the lien holder would not have allowed Plaintiff to retain title to the vehicle!,]” and rejected Ackley’s “pure speculation” that this lender, Federal Employees Credit Union, would not have let Joey keep the salvage. The court *1011 awarded the salvage value, $8,905.07,[2] and asked Hunter to provide “specific statutory authority” for an award of attorney fees. Apparently no such authority was provided, as the court later rendered judgment for only $8,905.07, plus costs and legal interest. The judgment is silent as to the claims for lost use or attorney fees.
USAgencies took this appeal, raising four assignments of error.

Discussion

15An insurance policy is a contract that constitutes the law between the parties. La. C.C. art.1983; Marcus v. Hanover Ins. Co., 98-2040 (La.6/4/99), 740 So.2d 603; Clarendon Nat’l Ins. Co. v. Jeansonne & Remondet, 37,765 (La.App. 2 Cir. 10/23/03), 859 So.2d 877, writ denied, 2004-0002 (La.3/12/04), 869 So.2d 826. If the wording of the policy is clear and expresses the intent of the parties, the policy must be enforced as written. La. C.C. art.2046; Marcus v. Hanover Ins. Co., supra; Sibley v. Deer Valley Homebuilders, 45,064 (La.App. 2 Cir. 3/3/10), 32 So.3d 1034. Absent conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose conditions on the obligations they contractually assume. Marcus v. Hanover Ins. Co., supra; Bamert v. Johnson, 40,-066 (La.App. 2 Cir. 8/17/05), 909 So.2d 705.
The USAgencies “Louisiana Personal Auto Policy” contains the following provision on page 11:
Payment of Loss
We may, at our option, elect to pay for the cost of repair of property damage any auto insured under Parts D or E [collision coverage] or the cost of replacement of the damaged or stolen property. * * * We may, at our option, keep all or part of any recovered theft loss or other salvaged property for which you have otherwise been paid or compensated. If the auto is subject to a lien or a person or entity other than you had an ownership interest in the auto at the time of the accident or loss, such person or entity may be included by us as a payee on any payment.[3]
This provision plainly allows USA-gencies, at its option, to keep all or part of the salvaged property for which Hunter or his mortgage lender was paid or compensated. The record shows that USAgencies did indeed pay or | ficompensate the mortgage lender as required by the policy, and that USAgencies exercised its option to keep the salvage. With these policy provisions satisfied, Hunter had no right to retain the salvage. The city court’s conclusion to the contrary is legally wrong and is hereby reversed.
With this conclusion, further discussion is not really necessary, but we would note that Hunter’s adverse witness, Mark Ack-ley, cogently described this policy provision and the economics of declaring a vehicle a total loss. He testified that in his 33 years’ experience adjusting claims, no mortgage lender had ever agreed to let the insured retain the salvage after the insurer paid for it. In light of the clear policy provision and the allocation of risk inherent in the insuring agreement, the city court was manifestly erroneous to reject Ackley’s testimony.
On this record, the fact that USA-gencies used a power of attorney that lacked a notary and witnesses is of no consequence. Under the policy’s “Payment of Loss” provision, Hunter was re *1012 quired to assign the title once USAgencies paid the claim and elected to keep the salvage. USAgencies correctly shows that the title transfer law, La. R.S. 32:705, is chiefly intended to protect innocent purchasers. Ballard v. McBryde, 275 So.2d 464 (La.App. 2 Cir.1973). When no innocent purchaser is involved, failure to comply with the statute does not void the transfer. Hyster Co. v. Reeves, 541 So.2d 363 (La.App. 2 Cir.), writ denied, 546 So.2d 1215 (1989); Gooch v. Dick Bohn Ford Inc., 140 So.2d 903 (La.App. 4 Cir. 1962). Such is the case here; Hunter was not prejudiced by the apparent failure to comply with R.S. 32:705. We also note that the named insured, Bathsheba, was domiciled in Texas, the accident occurred in Texas, the 17salvage was stored in Texas, and the ultimate sale of salvage occurred in Texas. On these facts, USAgen-cies was warranted in treating the sale as subject to Texas law, under which the power of attorney was valid at the time of this transfer.[4]

Conclusion

For the reasons expressed, the judgment of the city court is reversed and judgment is rendered herein dismissing the case. All costs are to be paid by Joey Hunter.
REVERSED AND RENDERED.

. USAgencies initially filed a peremptory exception of nonjoinder, urging that the matter could not be fully adjudicated without Bathsheba’s presence. The record shows no *1010 ruling on this exception, and it was made moot by USAgencies' third-party action against her.

. The court also wrote, incongruously, “Any damages for loss of use were clearly established and are therefore denied.”

. Boldface type in the original, indicating terms defined in the policy, has been omitted.

. Texas Transp. C. § 501.075 provided, "A document necessary to transfer ownership of a motor vehicle is valid without regard to whether the document is executed before a notary public.” This section was repealed effective January 1, 2012.